Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6256 | **DATE** | 7/14/2004 |
| **CASE TITLE** | Walls v. United States | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Petitioner's Motion to Vacate Pursuant to 28 U.S.C. § 2255

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, petitioner's section 2255 motion to vacate her sentence (Doc. #1) is denied. This case is terminated.

(11) [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 16 2004 date docketed | |
| | Notified counsel by telephone. | | 13 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| aed/lc | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAISY WALLS, ) | DOCKETED |
| ) | |
| Petitioner, ) | JUL 1 6 2004 |
| ) No. 01 C 6256 | |
| v. ) | |
| ) HONORABLE DAVID H. COAR | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Daisy Walls' motion to vacate herسentence pursuant to 28 U.S.C. § 2255 is before this court. For the following reasons, the court finds that habeas relief is not warranted and denies Walls' motion in its entirety.

## I. Background

### A. Walls' Trial and Conviction

On November 13, 1998, following a jury trial, Walls was convicted of conspiracy to possess with intent to distribute a substance containing cocaine, in violation of 21 U.S.C. § 846 (Count I), conspiracy to distribute a substance containing cocaine, in violation of 21 U.S.C. § 846 (Count II), and possession with intent to distribute a substance containing cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count III).

Walls was represented by Lawrence Wolf Levin at trial. Prior to trial, the defense filed a motion to suppress the evidence of the cocaine. In support of her motion, Walls argued that the privately-employed Federal Express ("FedEx") employees who initially opened the packages containing the cocaine were performing a public, law-enforcement function and, thus, were functionally equivalent to government agents. Walls thus contended that the initial search was

13

subject to the dictates of the Fourth Amendment and further contended that it did not comply therewith. Following a hearing held over the course of two days and some intervening discovery, this court denied the motion.

Subsequently, the drug evidence was admitted at trial. Numerous government witnesses testified at trial. Walls did not testify at trial.

### B. Relevant Facts[1]

On April 22, 1998, FedEx employees in Memphis, Tennessee searched two packages that were addressed to the "Tascam Electrical Supply Company" at 9121 South Colfax in Chicago and discovered cocaine therein. The packages were addressed to the attention of Walls. There is no "Tascam Electrical Supply Company" in Chicago, and 9121 S. Colfax is Walls' private single-family residence. FedEx subsequently notified the Drug Enforcement Agency ("DEA") of its discovery of the cocaine, and the DEA decided to make a "controlled delivery" of the packages to Walls' home. Court-ordered break-wire devices were inserted into the packages to facilitate the agents' tracking of the packages following their delivery.

The next day, DEA Agent Homer Markhart posed as a FedEx deliveryperson to make the delivery. He wore a FedEx uniform, drove a FedEx truck to Walls' house, and approached her door with the packages. Markhart testified at trial about Walls' conduct during the delivery, as well as that of several other people in and around the residence at the time. Included in his testimony was his recollection of a young girl yelling, "Mama, your package is here" as he approached the house. *See* Pet. Br., p. 4. He also testified that after Walls came to the door, she

---

[1] The facts underlying Walls' conviction are more fully set forth in the Seventh Circuit's opinion denying Walls' direct appeal. *See United States v. Walls, et al.*, 225 F.3d 858 (7th Cir. 2000).

carefully scrutinized his clothing and avoided signing for the packages – first by asking her son, Danielle Walls ("Danielle"), to sign for the packages and ultimately by signing the name of the corporate addressee (rather than her own name). *See* Pet. Br., p. 5. He also testified that she exclaimed "I'll sign the electric company" before she could have seen the address labels on the packages (because he held the packages with the clipboard on top of them). The defense did not present any evidence to contradict this testimony. *See* Pet. Br., p. 6.

The trial testimony established that after Walls had signed for and accepted the packages, Markhart departed from her home. Thereafter, Sharee Williams (Walls' co-defendant) and Danielle exited the rear of the house with the packages and went to a neighboring house. Following a series of events culminating with the cessation of the transmission of the signal from one of the packages (which normally would indicate that the package had been opened), the agents proceeded to the residence to which Williams and Danielle had gone. There they found the unopened packages. The agents then proceeded to Walls' residence, where they knocked, identified themselves, and informed Walls of their investigation. Ultimately, Walls opened the door and stepped back, and the agents stepped inside.[2]

Markhart testified that petitioner subsequently invited him and the other agents to talk privately with her in the kitchen. *See* Pet. Br., p. 6. The agents administered Walls' *Miranda* rights, which she acknowledged. The government's witnesses, including Markhart, testified that Walls admitted that this was the third time that she had accepted similar packages and that she

---

[2] In connection with the trial of this case, the court ruled that Walls had consented to the agents' entry. The Seventh Circuit upheld the court's ruling on direct appeal. Although petitioner has submitted affidavits that address the circumstances of the agents' entry into her home, she does not challenge the constitutionality of their entry in asserting her ineffective assistance of counsel claims herein.

knew the packages at issue contained cocaine. They further testified that she informed them that the packages belonged to Delano Target, a member of the Gangster Disciples street gang. The defense did not present any evidence to contradict the government's evidence relating to Walls' confession. *See* Pet. Br., pp. 6-7.

### C. Walls' Post-Trial Motion and Subsequent Appeal

Following her November 13, 1998 conviction, Walls filed a motion for a new trial on December 4, 1998. The court denied the motion on December 15, 1998. On February 1, 1999, James A. Stamos replaced Mr. Levin as Walls' counsel. On March 18, 1999, this court sentenced Walls to 72 months' imprisonment, pursuant to the applicable statutes and sections of the United States Sentencing Guidelines.

Walls, represented by Mr. Stamos, timely appealed from her conviction and sentence. On appeal, Walls made three arguments: (1) that FedEx's initial search of the packages violated the Fourth Amendment because it constituted a joint endeavor between state deputy sheriffs and FedEx employees; (2) that the DEA's field test of the contents of the packages was constitutionally defective because the agent who conducted the search was not told why the packages were suspicious prior to conducting the test and the cocaine was not in plain view; and (3) that the agents' entry into her home violated the Fourth Amendment because she did not consent thereto. The first argument was premised on trial testimony that Gheric Bruce, a security officer for FedEx who participated in the initial search in Memphis, was also "commissioned" by the Shelby County Sheriff's Department (but was not a sheriff's deputy). There was no other testimony at trial concerning the scope of Bruce's involvement with the Sheriff's Department. On August 15, 2000, the Seventh Circuit affirmed this court's judgment in all respects relevant

herein. *See United States v. Walls, et al.*, 225 F.3d 858 (7th Cir. 2000). As to the first argument in particular, the Seventh Circuit rejected it because it was being raised for the first time (*i.e.*, it had not been raised during the trial or thereafter in a post-trial motion). *See Walls*, 225 F.3d at 862. Walls did not file a petition for certiorari to the United States Supreme Court.

**D.     Walls' Section 2255 Motion**

On August 14, 2001, represented by Mr. Stamos, petitioner timely filed a section 2255 motion to vacate her sentence. Petitioner seeks habeas relief on the grounds that she was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. Specifically, she contends that her trial counsel rendered ineffective assistance by: (1) conducting an insufficient investigation through his failure to interview witnesses who could have "affect[ed] key pieces of the prosecution's case" (in that they would have contradicted the government's version of the controlled delivery and subsequent related events) and (2) failing to argue that the initial search violated the Fourth Amendment in that one of the FedEx employees who conducted the initial search of the packages was dually employed by Fed Ex and the Sheriff's Department and the search constituted unlawful state action. (Pet. Mot., p. 2).[3]

---

[3] Along with her motion and supporting brief, Walls submitted her own affidavit challenging the performance of her trial attorney, Mr. Levin. In it, she contended that he: literally would not listen to her version of the events of her arrest; refused to accept a list of witnesses from her; refused to talk to any defense witnesses; did not allow her to testify in her defense even though she told him at trial that she wanted to (stating that she would be "eaten up on the stand"); and mentally coerced her to advise the court that she did not want to testify, notwithstanding that she actually wanted to testify. (Pet. Br., Aff. of Daisy Walls, ¶ 3). Walls also submitted the affidavits of four individuals who were present at her home on the date of the controlled delivery. Walls has expressly premised her motion upon only several of the allegations made in the affidavits, and has entirely ignored the others, failing even to reference them in her motion, her supporting brief, or her reply brief. The court will disregard those allegations in the affidavits that are not relevant to the grounds for relief asserted in Walls' section 2255 motion.

## II. Analysis

### A. Relevant Standards

Under 28 U.S.C. § 2255, federal prisoners can challenge the imposition or length of their detention if their conviction or sentence was founded on an error that is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1995) (internal quotations and citations omitted). If the court concludes that any such errors infected the judgment or sentence, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255 P 2.

Ineffective assistance of counsel is such a constitutional error. To establish that her trial counsel's assistance was ineffective, a petitioner must establish that: (1) her counsel's performance was deficient; and (2) the deficient performance prejudiced her defense. *Strickland v. Washington*, 466 U.S. 668, 687-691 (1984).

To meet the first prong of this test, a petitioner must show that her counsel's performance fell beneath the "objective standard of reasonableness" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 688. In alleging deficient performance, a petitioner is required to "identify the acts or omissions of counsel that are unreasonable." *United States v. Hodges*, 259 F.3d 655, 658 (7th Cir. 2001) (internal quotations and citation omitted). Moreover, "[a] party must present evidence, not mere conclusory allegations" to support her claim that her counsel's performance was deficient in a certain respect. *Barkauskas v. Lane*, 946 F.2d 1292, 1295 (7th Cir. 1991) (citations omitted). *See also Enoch v. Gramley*, 70 F.3d 1490, 1498-99 (7th Cir. 1995) (where the petitioner "makes conclusory or speculative allegations rather than specific factual

allegations" in support of ineffectiveness claim, he is not entitled to an evidentiary hearing, and his claim fails).

To meet the second prong of the test, a petitioner must demonstrate to a reasonable probability that, but for her counsel's performance, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* *See also Washington v. Smith*, 219 F.3d 620, 632-33 (7th Cir. 2000). "In requiring the defendant to show prejudice to the outcome of the trial, the Supreme Court noted that 'the purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding.'" *United States v. Hernandez-Rivas*, 348 F.3d 595, 600-01 (7th Cir. 2003) (quoting *Strickland*, 466 U.S. at 691-92).

To prevail, a petitioner must overcome the strong presumptions that her counsel's performance fell within the wide range of reasonable professional assistance and that the original verdict was reliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Hodges*, 259 F.3d at 658. Walls' burden in establishing her claim of ineffective assistance is heavy. *United States v. Shetterly*, 971 F.2d 67, 74 (7th Cir. 1992). "Substandard representation may be harmless where the evidence against the defendant is overwhelming." *Shetterly*, 971 F.2d at 74 (citations omitted).

**B.     Procedural Default**

The government claims that both of petitioner's ineffective assistance of counsel claims are procedurally defaulted. Specifically, the government argues that petitioner should have sought a new trial based upon her trial counsel's alleged shortcomings prior to sentencing and/or

on direct appeal. *See United States v. Frady*, 456 U.S. 152, 170-75 (1982). In that vein, it notes that Mr. Stamos assumed representation of Walls when her trial counsel ceased representing her shortly after the verdict was handed down and thus seeks to fault Walls for Mr. Stamos' failure to raise both ineffectiveness claims sometime prior to the filing of the instant section 2255 motion.

The Seventh Circuit "has held that most claims of ineffective assistance of trial counsel are properly raised for the first time in a § 2255 motion rather than on direct appeal." *McCleese v. United States*, 75 F.3d 1174, 1178 (7th Cir.1996) (citations omitted). However, "[w]here a defendant offers no extrinsic evidence to support his claim of ineffective assistance of counsel and he was represented by different counsel on appeal, that defendant must bring that claim on direct appeal or face procedural default for failing to do so." *McCleese*, 75 F.3d at 1178 (citations omitted).

As a preliminary matter, Mr. Stamos did not enter an appearance as Walls' counsel until February 1, 1999, almost two months after Walls had filed, and the court had rejected, her motion for a new trial. On direct appeal, Mr. Stamos raised the Fourth Amendment issue that is presented herein as the *basis* for one of petitioner's two ineffectiveness claims (*i.e.*, that because the FedEx employee who conducted the initial search of the packages was "commissioned" by the Sheriff's Department, FedEx's initial search was a joint endeavor with the government and was subject to the Fourth Amendment prohibition against unreasonable seizures and searches, and, ultimately, the search did not comply therewith). However, on direct appeal, the Fourth Amendment issue was asserted as a free-standing ground for appeal, rather than a basis for an ineffectiveness claim (as here). As noted above, the Seventh Circuit deemed the issue waived on

account of trial counsel's failure to raise it during or after the trial (in a post-trial motion).[4] Walls did not present either of the ineffectiveness claims raised herein (or, indeed, any ineffectiveness claims) on direct appeal.

Petitioner has proffered extrinsic evidence to support her first ineffectiveness claim (*i.e.*, based upon her counsel's failure to conduct a sufficient investigation and to present certain evidence at trial). Therefore, her counsel's purported failure to raise that claim on direct appeal did not effect a procedural default. *Id.* Petitioner's second ineffectiveness claim is not premised upon any extrinsic evidence, but instead upon one tidbit of trial testimony. Therefore, that claim is at least facially subject to a procedural default analysis, as it was not raised on direct appeal (although the underlying Fourth Amendment issue was). However, the court declines to dispose of petitioner's claim on the basis of procedural default and, as set forth in subsection (D), instead finds that it is a claim that could not, under any circumstances, entitle petitioner to habeas relief.

### C. Alleged Deficiencies in Trial Counsel's Investigation and Presentation of Evidence

Petitioner claims that her trial counsel rendered ineffective assistance by virtue of his failure to conduct a sufficient investigation – in particular, his failure to interview certain specified witnesses who could have testified at trial and provided testimony harmful to the government's case. "Effective representation of a criminal defendant requires pretrial

---

[4] Petitioner contends that "[i]t was not until this ruling that the ineffective assistance claim relative to the waiver of this issue was made apparent." (Pet. Reply, p. 2). More specifically, she contends that "current counsel was not aware that the [Seventh Circuit Court of Appeals] would consider the issue waived until that court so ruled [on direct] appeal." (Pet. Mot., p. 2). These statements appear to be calculated to defend against the charge that the failure to raise on direct appeal the ineffectiveness claim based upon trial counsel's failure to raise the Fourth Amendment issue effected a procedural bar. Contrary to defense counsel's implication, an attorney's failure to anticipate the Seventh Circuit's adherence to its own solid precedent does not constitute "cause."

preparation and investigation." *Shetterly*, 971 F.2d at 74 (citations omitted). As to the latter, "[a]ttorneys have a professional obligation to conduct 'reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Brown v. Sternes*, 304 F.3d 677, 691 (7th Cir. 2002) (quoting *Strickland*, 466 U.S. at 691).

The standard for assessing the reasonableness of counsel's investigation is an objective one. *See Williams v. Washington*, 59 F.3d 673, 679 (7th Cir. 1999). "The amount of preparation is a matter of professional judgment, which is entitled to deference." *Shetterly*, 971 F.2d at 74 (citation omitted). "[A] petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *United States v. Gramley*, 915 F.2d 1128, 1134-35 (7th Cir. 1990) (internal quotations and citation omitted).

The government concedes that, assuming the truth of Walls' allegations (as outlined above), she can satisfy the first prong of the required showing under *Strickland*. However, it is not necessary for the court to analyze this issue because Walls cannot, in any event, meet the second prong of *Strickland*'s test. That is, assuming the truth of her allegations concerning her trial counsel's insufficient investigation and corresponding failure to present certain testimony at trial, she cannot show prejudice stemming from his deficient performance in that regard.

In support of her claim of prejudice, Walls contends that had defense counsel conducted a sufficient investigation and presented certain testimony at trial, it "could reasonably be expected to effect [sic] the outcome of the trial." (Pet. Reply, p. 2). First, she argues that certain testimony would have impeached a "key Government witness [Markhart] on several specific

points" and thereby impacted his general credibility as a witness. (*Id.*). Second, she argues that "the witnesses would have directly challenged the existence of the confession." (Pet. Reply, p. 3). *See also* Pet. Br. pp. 11-12.

In support of her argument that the proffered testimony would have impeached Markhart, Walls refers specifically to Monique Byrd's affidavit stating that she was the person who greeted Markhart and that she neither said "Mama, your package is here" nor heard anyone else do so. *See* Pet. Br. p. 5, Aff. of M. Byrd, ¶¶ 4-5.[5] Walls also contends that her son, Danielle, could have offered testimony contradicting Markhart's testimony concerning her behavior during the delivery (*e.g.*, that she scrutinized his clothing, asked her son to sign for the packages, and could not have seen the label designating the electrical company as the recipient of the packages before she signed for the electrical company). *See* Pet. Br., pp. 5-6. The only portion of Danielle's affidavit that is arguably relevant in this regard is his statement that FedEx told his mother to sign for the electrical company by her initials. *See* Pet. Br., Aff. of Danielle Walls.[6] Walls does not cite any other testimony and, indeed, there is no other testimony in any of the four affidavits that contradicts Markhart's testimony on the challenged points (*i.e.*, *vis a vis* the circumstances surrounding the controlled delivery).

Ultimately, this first argument fails because Byrd's and Danielle's testimony would not

---

[5] Interestingly, Byrd also states in her affidavit that she heard Markhart tell Walls to sign her name by the "X" (which contradicts the proffered testimony of other defense witnesses). *See* Pet. Br., Aff. of M. Byrd, ¶ 11. Although she also states that Walls never asked anyone to sign for her, her testimony is insufficient to impeach Markhart on this point, as Byrd admits that she was out of the presence of Walls and Markhart for a number of minutes. *See* Pet. Br., Aff. of M. Byrd, ¶¶ 6, 7, 12.

[6] Danielle and Ida Grimes also state that Markhart placed the packages on the couch, instead of holding them with the clipboard on top of them, as he testified he did (which is relevant only insofar as it relates to how Walls knew that the packages were addressed to the electrical company). *See* Pet. Br., Aff. of Danielle Walls, ¶ 5; Aff. of Ida Grimes, ¶ 11).

-11-

contradict Markhart's testimony in any significant respect, let alone destroy his general credibility. Byrd's testimony arguably contradicts Markhart's testimony that a girl said "Mama, your package is here" (although its ability to do so is weakened by Byrd's admission that she was not in Markhart's presence the entire time, including towards the beginning of his time at the house and while Walls was in the house). Danielle's testimony arguably contradicts Markhart's testimony on one point, as well, but only very indirectly. He states that Markhart asked his mother to sign for the electrical company, whereas Markhart testified that she stated she would sign for the electrical company before he had revealed to her in any way that the packages were addressed to the electrical company.

In any event, all of the challenged testimony by Markhart constituted mere "circumstantial evidence of [Walls'] knowledge that the packages contained drugs." (Gov't Resp., p. 6). In essence, it went directly to Walls' knowledge that the packages contained drugs, which was conclusively established by her confession, alone. Moreover, these purported discrepancies are simply insufficient to impact Markhart's general credibility. Thus, the court is left with nothing other than Walls' speculation that her son and the other proffered witnesses could have impeached Markhart and harmed his general credibility (*see* Pet. Br., p. 11), which is insufficient to support a finding of prejudice. *See Enoch*, 70 F.3d at 1498-99; *Shetterly*, 971 F.2d at 75 (speculation concerning what evidence might have been discovered had counsel conducted a sufficient investigation is insufficient to demonstrate prejudice; the petitioner is required to show what the evidence would have been and how it would have yielded a different outcome) (citations omitted).

Walls' argument that the proffered witnesses would have called into question the very

-12-

existence of the confession fares no better. It is premised upon several observations made by Walls concerning the government's evidence of the confession. First, Walls notes that the confession was presented at trial solely through the government's witnesses (rather than through defense witnesses) and that no written statement was signed by her. (*Id.*). She also points to the fact that "in a house full of witnesses, the only people that the Government claimed could have heard [the confession] were the Government's witnesses." (*Id.* at pp. 3-4). Finally, Walls makes the rather confusing statement that, "[s]urely the testimony of the house guests and relatives present, estimated at 15 people by Agent Markhart . . . would have been more helpful to the defense than a complete inability to impeach the prosecution's witness regarding the content of the statement." (Pet. Br., p. 12). None of these observations calls into question the existence of the confession.

Moreover, all four of Walls' witnesses state in their affidavits that the agents "took" or "removed" Walls to the kitchen (whereas the testimony at trial indicated that, by her actions, Walls invited the agents to speak with her in the kitchen). Regardless of this purported discrepancy, the witnesses' proffered testimony in no way challenges Markhart's testimony that, once in the kitchen, Walls gave a confession. Indeed, Walls' own affidavit addresses many issues, but does not address, let alone deny, the existence of the confession, as detailed by the government's witnesses at trial. Likewise, she does not purport to deny the existence of the confession in her motion, brief, or reply brief.

Finally, the court is left again only with Walls' speculation that her witnesses could have challenged the existence of the confession. *See* Pet. Br., pp. 11-12. Accordingly, petitioner cannot establish that she suffered prejudice due to her counsel's failure to present testimony

challenging the confession. *See Enoch*, 70 F.3d at 1498-99; *Shetterly*, 971 F.2d at 75.

Although Walls contends that her counsel's failures, as outlined above, "create[d] a failure in the adversarial process so egregious that the process can not possibly be relied on to produce a fair result," the court finds that is not the case. (Pet. Br., p. 13). Ultimately, the court finds that none of the proffered testimony would call into question the existence of Walls' own confession, which constitutes overwhelming evidence of her guilt and forecloses any finding of prejudice. *See, e.g., United States v. Pierson*, No. 01 C 0053, 2003 U.S. Dist. LEXIS 14229 (N.D. Ill. Aug. 15, 2003) (denying petition for habeas relief where the petitioner alleged that counsel failed to investigate his case and interview material witnesses and failed to present available impeachment evidence at trial; the evidence that counsel failed to investigate and/or present at trial was not inconsistent with the evidence adduced at trial, and the petitioner's claims did not undermine the trial court's finding of guilt, precluding any finding that he was prejudiced by his counsel's deficient performance). For that reason and the reasons set forth above, the court denies Walls' motion. Because the record conclusively establishes that petitioner is not entitled to habeas relief, she is not entitled to an evidentiary hearing, and her motion is dismissed. *See McCleese*, 75 F.3d at 1182. *See also United States v. Taglia*, 922 F.2d 413, 419 (7th Cir. 1991); *Humphrey v. United States*, 896 F.2d 1066, 1070 (7th Cir. 1990).

**D.    Trial Counsel's Failure to Challenge the Constitutionality of the Initial Search Based Upon FedEx's and the Government's Purported Joint Endeavor**

Petitioner also claims that her trial counsel rendered ineffective assistance through his "failure to present the argument that the initial search of the packages by FedEx employees constituted an unlawful state action, in violation of the Fourth Amendment because of the agent's

dual employment with the Sheriff's Department." (Pet. Mot., p. 2). She alternatively frames the claim as one based upon her trial counsel's "failure to preserve for appeal the issue that the initial search of the package constituted an unlawful state action because the [FedEx employees] who undertook the search were employed at the time as Deputy Sheriffs for Shelby County." (Pet. Reply, p. 4). As noted above, petitioner's contention concerning the meritoriousness of the underlying Fourth Amendment issue is premised upon a single piece of trial testimony to the effect that a FedEx employee who participated in the initial search of the packages was also "commissioned" by the Shelby County Sheriff's Department. Walls contends that this piece of trial testimony, alone, provided a basis for suppressing the drug evidence, as it demonstrated that the FedEx security agents were acting in a dual capacity (*i.e.*, a joint endeavor on the part of the government and FedEx) and therefore that the search constituted state action. She argues on that basis that the search was subject to the Fourth Amendment's prohibition against unreasonable searches and seizures and contends further that it contravened the Fourth Amendment. *See* Pet. Br., pp. 13-15.. She does not cite a single case in support of her contention that this Fourth Amendment issue is a meritorious one.

It is not necessary for this court to address whether petitioner's claim is procedurally defaulted or to delve into the merits of the claim. This is so because, on collateral review, the failure to preserve a Fourth Amendment issue can never be found to be "prejudicial" within the meaning of *Strickland*. *Holman v. Page*, 95 F.3d 481, 492 (7th Cir. 1996), *cert. den.*, 520 U.S. 1254 (1997) (holding that "under *Strickland* no prejudice exists when evidence gathered in violation of the Fourth Amendment is erroneously admitted at trial"). *See also Hernandez-Rivas*, 348 F.3d at 601 (rejecting the petitioner's ineffective assistance of counsel claim based upon his

attorney's failure to object to the magistrate's recommendation to deny his motion to suppress without considering whether error existed; it was "enough to note that whether there was error or not, the outcome of this trial was no less reliable for having heard the additional evidence") (citation omitted); *United States v. Jones*, 152 F.3d 680, 688 (7th Cir. 1998) ("ineffectiveness claims based on a counsel's performance in connection with a motion to suppress evidence does not constitute the type of prejudice contemplated by *Strickland*") (citation omitted); *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997) (rejecting as "futile" ineffective assistance of counsel claim premised upon trial counsel's performance in arguing for the suppression of evidence; "the damage done by an inept attorney in this context does not constitute prejudice as defined under *Strickland*") (citation omitted).

The rationale for this rule is that the failure to secure the suppression of reliable evidence does not undermine confidence in the reliability of the outcome of the trial. *Holman*, 95 F.3d at 488-492.[7] That is, "[i]n cases where an attorney's mistake resulted in the admission of evidence that would have otherwise been suppressed, the outcome of the trial does not become any less reliable." *Hernandez–Rivas*, 348 F.3d at 601 (citations omitted). Accordingly, it is not necessary for the court to determine whether Mr. Levin's performance was deficient, as "whether there was

---

[7] Indeed, the exclusionary rule operates to bar the admission of reliable evidence. As the Seventh Circuit has explained, "It is inconsistent with the function of the exclusionary rule to permit a criminal defendant on federal habeas review to claim prejudice because but for his counsel's incompetence on the suppression issue he would have gotten away with the crime. Such a claim may be factually true – but that alone does not entitle a convict to a new trial because that alone does not constitute 'prejudice' within the meaning of *Strickland*. *Strickland* prejudice relates to the fairness of the proceedings and to the confidence one may place in the outcome, i.e., to the correctness of the verdict." *Holman*, 95 F.3d at 491. *See also Elizalde-Adame v. United States*, 56 Fed. Appx. 279, 280 (7th Cir. 2003) ("[T]he 'prejudice' component of *Strickland* is designed to identify situations in which lawyers' deficiencies create an unacceptable risk of convicting the innocent. The exclusionary rule is not an innocence-protection device; it serves other social goals. [] *Holman* establishes that . . . the propriety of a search [may not be] litigated on collateral review, through the expedient of blaming the lawyer.").

error or not, the outcome of this trial was no less reliable for having heard the additional evidence." *Id.*[8]

Even if petitioner had presented a colorable claim for habeas relief based upon trial counsel's failure to secure suppression of the drug evidence or to challenge its admission in a post-trial motion, she could not prevail. She relies upon nothing more than one piece of trial testimony to the effect that one of the FedEx employees who conducted the initial search was "commissioned" by the Sheriff's Department. With that scant – and ambiguous – evidence, she has failed to demonstrate that the search constituted state action (let alone that it was not compliant with the Fourth Amendment). Indeed, the evidence presented at trial was that, in conducting the search, the FedEx employees were acting in their capacity as such, with the purpose of ensuring that contraband not be permitted to move through FedEx's system. Moreover, the Seventh Circuit found that even if the Fourth Amendment issue, itself, was not forfeited (as the Seventh Circuit found it was), there was no plain error. Given the Seventh Circuit's finding, this court would not find prejudice from her trial counsel's alleged error.

### III. Conclusion

For the foregoing reasons, Walls' section 2255 motion to vacate her sentence is denied.

Enter:

David H. Coar
**United States District Judge**

Dated: July 14, 2004

---

[8] An attorney's ineffectiveness in connection with a suppression issue may be used to show his overall incompetence, and where such overall incompetence renders the proceedings unfair or unreliable, it provides a basis for finding prejudice and ordering a new trial. *See Holman*, 95 F.3d at 492; *Jones*, 152 F.3d at 688 n.5. However, petitioner has not so argued here, and no such finding would be warranted, in any event.